# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MARTIN GASTELUM IBARRA, ) <br> ) <br> Defendant. ) <br> ) | CRIMINAL ACTION <br><br> No. 11-20034-CM |

## MEMORANDUM AND ORDER

Defendant Martin Gastelum Ibarra is charged with (1) possession with intent to distribute more than 500 grams of methamphetamine and (2) being an alien unlawfully in the United States after having been deported. This matter is before the court on defendant's Motion to Suppress (Doc. 18) and Motion to Certify Question to Kansas Supreme Court, and Supplement to Motion to Suppress (Doc. 25).

## I.     Factual Background

On May 6, 2011, a clear and dry day, Officer Jerett Ranieri was traveling westbound on Interstate 70 in a marked patrol car when he noticed a green suburban following a red pick-up in the eastbound lane. Officer Ranieri testified that the suburban was about three-car lengths behind the pick-up. He also testified that the driver was driving seventy miles per hour. At this speed, Officer Ranieri testified that he believed the suburban should have been at least seven-car lengths behind the pick-up. Citing K.S.A. § 8-1523 (the Kansas statute requiring a reasonable and prudent distance between vehicles) as justification, Officer Ranieri made a U-turn across the median and caught up

with the suburban. He testified that for safety reasons, he pulled up beside of the suburban to see how many passengers were inside, and whether they were wearing seatbelts. The video shows that he pulled up beside the vehicle (to look inside) before activating his emergency lights and pulling the suburban over. Defendant was the front-seat passenger of the suburban; he did not claim ownership of the vehicle.

Eventually, Officer Ranieri received consent to search the suburban from Guadalupe Rendon-DeMartinez, the driver, who was in possession and control of the vehicle. Upon searching the suburban, Officer Ranieri found an oversized cooler containing methamphetamine.

**II.     Discussion**

Defendant requests that the court suppress the methamphetamine recovered from the May 6, 2011 traffic stop/search. Defendant argues that the traffic stop violated the Fourth Amendment to the United States Constitution because the officer did not have reasonable suspicion that the suburban was following too closely in violation of K.S.A. § 8-1523. Because the initial traffic stop was invalid, argues defendant, all evidence found as a result of the stop should be suppressed.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It "does not proscribe all contact between the police and citizens, but is designed 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *United States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976)). "A traffic stop, however brief, constitutes a seizure within the meaning of the Fourth Amendment, and is therefore only constitutional if it is reasonable." *United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001). The government

bears the burden of demonstrating that the seizure was reasonable. *United States v. Turner*, 553 F.3d 1337, 1344 (10th Cir. 2009) (citation omitted).

Analyzed under *Terry v. Ohio*, 392 U.S. 1 (1968), a traffic stop is valid if it is based on an observed traffic violation or if it is supported by reasonable suspicion that a traffic violation has occurred or is occurring. When considering whether an officer had reasonable suspicion to stop a vehicle, the court looks at whether an objective basis—viewed from the standpoint of an objectively reasonable police officer—existed for suspecting a traffic violation has occurred or is occurring. *United States v. Cervine*, 347 F.3d 865, 869 (10th Cir. 2003). The officer's subjective motives are of no concern; the only question is whether the stop was "objectively justified." *United States v. Chavez*, 534 F.3d 1338, 1344 (10th Cir. 2008) (citation and internal quotation marks omitted).

The court must determine whether, under this standard, Officer Ranieri had reasonable suspicion that the driver of the suburban was violating K.S.A. § 8-1523. Section 8-1523(a) does not identify a specific minimum distance for following another vehicle; it simply states:

> The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

K.S.A. § 8-1523.

### A. Motion to Certify

In his motion to certify, defendant argues that instead of determining whether following three car lengths behind a vehicle is following "more closely than is reasonable and prudent" under the current precedent, the court should stay this case and ask the Kansas Supreme Court to interpret K.S.A. § 8-1523.

This court may certify a question to the Kansas Supreme Court when there are questions of Kansas state law that may be determinative of the case and it appears to this court that there is no

-3-

controlling precedent in the decisions of the Kansas appellate courts. K.S.A. § 60-3201. The decision to certify is within the sound discretion of the court and should not be "'routinely invoked whenever a federal court is presented with an unsettled question of state law.'" *Marzolf v. Gilgore*, 924 F. Supp. 127, 129 (D. Kan. 1996) (quoting *Armijo v. Ex Cam, Inc.*, 843 F.2d 406 (10th Cir. 1988)); *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 178 F.3d 1363, 1365 (10th Cir. 1999) ("Certification is never compelled, even when there is no state law governing an issue.").

Certification is unnecessary in this case. Although the Kansas appellate courts have not defined the exact parameters of what is "reasonable and prudent," they, and federal courts interpreting § 8-1523(a), have provided well-reasoned guidelines for determining whether there is reasonable suspicion that a motorist is violating the statute. *See, e.g.*, *State v. Noel*, No. 103,480, 2011 WL 767853, at *1 (Kan. App. Feb. 18, 2011); *State v. Moore*, 154 P.3d 1 (Kan. 2007); *United States v. Vercher*, 358 F.3d 1257 (10th Cir. 2004).[1] For this reason, defendant's motion to certify is denied.

### B. *Motion to Suppress*

In considering defendant's motion to suppress, the court first turns to whether the initial stop violated defendant's Fourth Amendment right to be free from an unreasonable seizure. If the stop was legal, then no basis exists for suppressing the evidence found during the search. But if the stop was illegal, then the court must determine whether to suppress the evidence.

1. Validity of Initial Stop

Officer Ranieri testified that he pulled the suburban over for violating K.S.A. § 8-1523. What is "reasonable and prudent" for purposes of § 8-1523 depends on several variables: speed,

---

[1] The parties provided summaries of the state and federal cases addressing K.S.A. § 8-1523 in their briefs. (*See* Docs. 25 & 26.)

-4-

following distance, road conditions, and traffic conditions. *Moore*, 154 P.3d at 350 (citing *Vercher*, 358 F.3d at 1262). Courts have consistently found that officers have reasonable suspicion to believe a motorist is violating § 8-1523 when the following distance is two car lengths or less, even in ideal road and traffic conditions. *Noel*, 2011 WL 7677853, at *1 (upholding a traffic stop of a vehicle traveling less than two seconds behind another vehicle); *Moore*, 154 P.3d at 8 (upholding a traffic stop of a vehicle traveling less than two-car lengths behind another vehicle); *Vercher*, 358 F.3d at 1260 (reversing the lower-court's ruling that a following distance of two-car lengths did not create reasonable suspicion of a violation of § 8-1523). The Kansas Driver's Manual and the Kansas Highway Patrol's website recommend a two-second rule under normal conditions; the recommendations increase to three or four seconds under adverse conditions. *See* www.ksrevenue.org/pdf/dlhb.pdf; www.kansashighwaypatrol.org/faqs/violations.html.

Officer Ranieri testified that he believes the standard for a "reasonable and prudent" distance is one car length for every ten miles an hour a vehicle is traveling—seven car lengths in this instance. Defendant contends that Officer Ranieri violated his rights by employing a seven-car-lengths test, instead of the two-seconds test recommended in the driver's manual and on the highway patrol website. The government argues that the seven-car-lengths test should determine what is a "reasonable and prudent" distance. In any event, in this case, Officer Ranieri testified that the green suburban was following three car lengths behind the red truck. The court was unable to verify his testimony by watching the video of the stop, however, as the video did not begin until Officer Ranieri crossed the median from westbound I-70 to eastbound I-70.

The court's decision on this issue comes down to Officer Ranieri's credibility. The court heard him testify and observed him on the witness stand. The court does not believe that Officer Ranieri applies a standard that requires cars traveling 70 miles per hour to remain seven car lengths

-5-

behind the car in front of them, although he testified that he used such standard.[2]  Ultimately, the court finds such a standard implausible.  The court further found Officer Ranieri's testimony not credible regarding his reason for pulling up beside the green suburban before activating his lights.  Officer Ranieri testified that he looked at the occupants of the car for officer safety, but the court's observations of Officer Ranieri on the stand suggest otherwise.  While Officer Ranieri's subjective motive for pulling over a car is irrelevant, *Chavez*, 534 F.3d at 1344, the court's credibility determination calls into question whether he had a reasonable suspicion that the green suburban was violating a traffic law at all.  The video shows cars traveling at a high rate of speed—many of which would seemingly violate Officer Ranieri's seven-car-lengths rule— although Officer Ranieri testified that he could not tell how close they were based on watching the video.  Officer Ranieri himself was driving in the opposite direction of the suburban at the time he claims he saw it traveling only three car lengths behind the truck.  Based on the court's concerns with certain portions of Officer Ranieri's testimony and the court's inability to independently verify whether the green suburban was indeed only three car lengths behind the red truck (a distance that arguably would not support reasonable suspicion to stop the car in any event, although the court need not reach that issue here), the court cannot find that the government met its burden of showing that the seizure as a result of the initial traffic stop was reasonable.

        2.  Suppression of the Evidence Found Pursuant to the Search

        Because the court determines that Officer Ranieri violated defendant's Fourth Amendment

---

[2]  The court recognizes that Officer Ranieri has testified to using this standard on at least one other occasion.  *See, e.g.*, *United States v. Velazquez*, 494 F. Supp. 2d 1250, 1251 (D. Kan. 2007).  But the court does not find that prior consistent testimony bolsters his credibility on this issue.  If the court has misjudged his credibility, and Officer Ranieri does, indeed, apply a "one car length for every ten miles-per-hour" standard, the court has serious concerns about the validity of this approach.

rights through the initial traffic stop, the court must next examine whether the evidence found as a result of the subsequent search must be suppressed. This brings the court to the question of passenger "standing."[3] Standing was not an issue for the initial traffic stop; because a police officer effectively seizes everyone in the vehicle, passengers have standing to challenge the constitutionality of the initial stop. *United States v. White*, 584 F.3d 935, 945 (10th Cir. 2009). But defendant's ability to challenge the initial stop does not automatically mature into an ability to challenge the subsequent search.

Defendant has not asserted a reasonable expectation of privacy in the vehicle or the cooler. Defendant was a passenger, and Ms. Rendon-DeMartinez drove the vehicle. The vehicle was registered to Rodrigo Martinez. There was no testimony that defendant owned or rented the vehicle or possessed it with the owner's permission. Nor was there any testimony that defendant asserted a claim that the cooler was his. To the contrary, Ms. Rendon-DeMartinez stated that she bought the cooler at a flea market.

The only way defendant may challenge the search, therefore, is to use a derivative evidence theory—to argue that but for his unlawful detention, the officer would not have found the drugs. *United States v. DeLuca*, 269 F.3d 1128, 1135 (10th Cir. 2001). In the Tenth Circuit, there must be a "causal link between the violation and the contraband." *Id.* at 1134–35. If the evidence ultimately found in the vehicle is the fruit of the defendant's illegal detention, then the defendant will have standing to seek suppression. *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir.

---

[3] The question is technically not one of "standing," which is a misnomer when discussing Fourth Amendment rights. In the Fourth Amendment context, the question of whether a defendant can show that his own constitutional rights were violated falls within substantive Fourth Amendment law rather than a jurisdictional inquiry. *United States v. Johnson*, 584 F.3d 995, 999 n.3 (10th Cir. 2009). Nevertheless, for simplicity, the court will refer to the question here as one of "standing," as many courts do.

2000). To prevail under this theory, however, the defendant bears a two-pronged burden. He must not only show that his original detention violated the Fourth Amendment, but also that there was a "factual nexus between the illegality and the challenged evidence." *Id.* at 1131. If the defendant can show that the evidence would not have been found but for his—and only his—detention, then the burden shifts to the government to show that the evidence is not the fruit of the poisonous tree. *DeLuca*, 269 F.3d at 1133. Although this framework has been criticized, *see, e.g.*, *United States v. Mosley*, 454 F.3d 249 (3d Cir. 2006),[4] the Tenth Circuit has recognized that courts are bound by precedent to follow it, *see United States v. Ladeaux*, 454 F.3d 1107, 1111 n.4 (10th Cir. 2006).

      Under prevailing Tenth Circuit law, defendant has not met his burden and demonstrated the factual nexus required for suppressing the drugs found in the car. Defendant has provided no evidence of a factual nexus between the violation of his rights and the challenged evidence. As previously mentioned, defendant must show that the evidence would not have been found but for his own unlawful detention. This can be done by showing that had defendant departed the scene, he would have been allowed to leave in the vehicle. *See Nava-Ramirez*, 210 F.3d at 1131 ("At the

---

[4] *Mosley* involved a traffic stop that was illegal from its inception (as in this case). *DeLuca* and *Nava-Ramirez* involved stops that were initially legal, but later involved an illegal detention of the passengers. *Mosley* makes much of this distinction, and cites another Tenth Circuit case—*United States v. Roberts*, 91 F. App'x 645 (10th Cir. Mar. 3, 2004)—to show that the Tenth Circuit finds significance in the sequence of events and whether the initial traffic stop was illegal. This court does not read *Roberts* (an unpublished decision) to render *DeLuca* and *Nava-Ramirez* distinguishable from the case at hand. The language in *DeLuca* and *Nava-Ramirez* is strong, broad, and clear. While the initial traffic stop in both those cases was not challenged, the Tenth Circuit did not limit its holding to cases involving unchallenged initial stops. This court is not at liberty to ignore the Tenth Circuit's directive that "[defendant, the passenger,] must show that the methamphetamine would never have been found but for *his*, and only his, unlawful detention." *DeLuca*, 269 F.3d at 1133 (emphasis in original). Instead, the court will leave it to the Tenth Circuit whether to limit the scope of *DeLuca* and *Nava-Ramirez* to stops that are legal at their inception. But in a case such as this one, the facts of the case demonstrate the appeal of the Third Circuit's distinction between stops that are legal at their inception and stops that are illegal at their inception.

suppression hearing, Nava-Ramirez put on no evidence to demonstrate that had he, at some point after the passenger compartment search was completed but before the trunk search began, requested permission or otherwise attempted to depart the scene, he would have been able to leave in Wald's car. In the absence of some supportive proof, this court cannot simply speculate that Wald would have given Nava–Ramirez permission to take his car."). Defendant presented no such evidence. There is no evidence before the court that he had possessory control over the vehicle or that he would have otherwise been allowed to leave the scene in the vehicle. And there is no evidence that the drugs were found as a result of defendant's detention. The drugs were found because Ms. Rendon-DeMartinez—the person with the owner's permission to possess the vehicle—consented to a search of the vehicle. Defendant has not established a factual nexus between his detention and the discovery of the drugs, and the court denies his motion to suppress.

**IT IS THEREFORE ORDERED** that defendant's Motion to Suppress (Doc. 18) is denied.

**IT IS FURTHER ORDERED** that defendant's Motion to Certify Question to Kansas Supreme Court, and Supplement to Motion to Suppress (Doc. 25) is denied.

Dated this 23rd day of November 2011, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**